IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP PRODUCTS NORTH AMERICA INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-07-2369 |
| J.V. INDUSTRIAL COMPANIES, LTD., | § § § | |
| Defendant. | § | |

## **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment on Counterclaim and Affirmative Defense ("Motion for Summary Judgment") [Doc. # 54] and the Motion for Partial Summary Judgment [Doc. # 55] filed by Plaintiffs BP Products North America Inc. ("BP") and American Home Assurance Company ("American Home"). Having carefully reviewed the record in this case, including the parties' briefing on the pending motions,[1] and having applied the relevant legal authorities, the Court **grants** the Motion for Summary Judgment and **grants** the Motion for Partial Summary Judgment.

---

[1]  Defendant J.V. Industrial Companies, Ltd. ("J.V.") filed a Response to the Motion for Summary Judgment [Doc. # 62], BP filed a Reply [Doc. # 71], and J.V. filed a Sur-Reply [Doc. # 77]. J.V. filed a Response to the Motion for Partial Summary Judgment [Doc. # 67], BP filed a Reply [Doc. # 70], and J.V. filed a Sur-Reply [Doc. # 78].

## I.   BACKGROUND

On November 11, 2004, JV Industrial Companies, Ltd. ("J.V.") and BP entered into a Mechanical & Piping Turnaround Services Contract ("Turnaround Contract") for J.V. to perform mechanical and piping turnaround ("TAR") services for BP. On November 29, 2004, the parties entered into a Short Form Contract for J.V. to perform "general mechanical type services for work on piping and equipment in support of the 2005 RHU [Resid Hydrotreating Unit] TAR" at the BP refinery in Texas City, Texas. The Short Form Contract incorporates by reference the terms and conditions of the Turnaround Contract and the two contracts are referred to herein collectively as the "Contract."[2] The Contract provides that it is to be construed under Texas law. *See* Contract, Exh. A-1 to Motion for Summary Judgment, § 34.01.

J.V. removed and reinstalled piping elbows connected to the inlet and outlet sides of certain heat exchangers at the RHU. BP alleges that J.V. reinstalled the elbows in the wrong locations, switching the inlet and outlet elbows such that a carbon elbow was placed where a 1.25% chromium steel elbow belonged.

On July 28, 2005, a fire occurred at the BP facility where J.V. had performed the work on the heat exchangers. The fire damaged the elbows and exchangers, as

---

[2]   The specific provisions of the Contract will be discussed more fully as relevant to the pending summary judgment motions.

well as other equipment in the RHU and surrounding property. BP claims that it also lost profits in its operation of the Texas City refinery as a result of the fire.

BP alleges that the fire was caused by the failure of the carbon elbow, improperly installed where a chromium steel elbow should have been installed, which caused a release and the subsequent ignition of a mixture of hydrogen and methane. This allegation is supported by the results of investigations conducted by a BP Investigation Committee and by the U.S. Chemical Safety Board. J.V. and its insurers have refused to indemnify BP for the losses allegedly caused by the fire.

On July 20, 2007, BP filed this lawsuit against J.V. for breach of contract, negligence, and breach of warranty to recover for its property damages, lost profits, and attorneys' fees. J.V. filed a counterclaim asserting that BP breached the Contract. J.V. also raised the breach of contract allegation as an affirmative defense.

After a lengthy period of discovery, BP moved for summary judgment on J.V.'s counterclaim and affirmative defense, asserting that J.V. has not presented evidence to raise a genuine issue of material fact in support of its breach of contract allegations. BP also moved for summary judgment on three isolated issues regarding the indemnity provision of the Contract. Specifically, BP seeks summary judgment that the indemnity provision is valid and enforceable, that it applies to claims by BP, and

that it covers indemnity claims for consequential damages.  Both motions have been fully briefed and are ripe for decision.

## II.    GENERAL LEGAL STANDARDS

### A.    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

The initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v.*

*Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).  If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).

### B.     Contract Interpretation

The Court is to interpret the terms of an unambiguous contract as a matter of law.  *Gonzales v. Denning,* 394 F.3d 388, 392 (5th Cir. 2004); *CSMG Tech., Inc. v. Allison*, 2009 WL 500599, *6 (S.D. Tex. 2009); *MCI Telecommunications Corp. v. Texas Utilities Electric Co*., 995 S.W.2d 647, 650 (Tex. 1999).  Texas follows the "four corners rule," where the intention of the parties is to be gathered from the instrument as a whole.  *Jacobson v. DP Partners Ltd. P'ship*, 245 S.W.3d 102, 106-07 (Tex. App. – Dallas 2008, no pet.) (quoting *Calpine Producer Servs., L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 787 (Tex. App. – Dallas, no pet.)); *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010).  "To determine whether a contract contains an ambiguity, the court must consider the contract as a whole in light of the

circumstances present when the parties entered the contract." *Southwestern Bell Tel., L.P. v. Public Util. Comm'n of Texas*, 467 F.3d 418, 422 (5th Cir. 2006). "The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent." *Addicks*, 596 F.3d at 294.

### III.   COUNTERCLAIM AND AFFIRMATIVE DEFENSE

As an affirmative defense and as a counterclaim, J.V. asserts that BP materially breached the Contract. In its counterclaim, J.V. does not identify any particular provision of the Contract that BP allegedly breached. In the affirmative defense, however, J.V. asserts specifically that BP breached Section 17.01 of the Contract.

"Recovery under a breach-of-contract claim requires proof of four elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Eaves v. Unifund CCR Partners*, 301 S.W.3d 402, 407 (Tex. App. – El Paso 2009, no pet.) (citing *Orix Capital Mkts., L.L.C. v. Wash. Mut. Bank*, 260 S.W.3d 620, 623 (Tex. App. - Dallas 2008, no pet.)); *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009).

It is undisputed that there exists a valid contract between J.V. and BP. J.V. alleges that BP breached Section 17.01 of the Contract, which provides:

> When Contractor [J.V.] deems the Work fully completed, including satisfactory completion of such inspections, tests and documentation as

> are specified in this Contract, Contractor shall, within ten (10) working days thereafter, give a written Notice of Completion of the Work to Company [BP], specifying the Work completed and the date it was completed. Within ten (10) calendar days after receipt of said Notice of Completion, Company may inspect the Work and shall either reject the Notice of Completion and specify defective or uncompleted portions of the Work, or shall give the Contractor a written Notice of Acceptance of the Work either for the purpose of final payment only, or for the purposes of final payment and final acceptance.

Contract, § 17.01. BP asserts that J.V. has no evidence that raises a genuine issue of material fact regarding its allegation that BP breached this section of the Contract.[3]

J.V. argues that BP breached § 17.01 of the Contract by filing this lawsuit. Specifically, J.V. argues that once BP gave it a Notice of Acceptance of the work, BP was precluded by § 17.01 of the Contract from suing J.V. for any damages resulting from J.V.'s work. There is nothing in the language of § 17.01, however, that supports J.V.'s argument. Moreover, § 2.02 of the Contract provides that "[a]ny inspection and acceptance by [BP] shall not constitute a waiver of any of its rights hereunder." There is nothing in § 17.01 or any other provision of the Contract that precludes BP from suing J.V. in this case, even after BP has issued a written Notice of Acceptance

---

[3] J.V.'s primary argument in opposition to BP's Motion for Summary Judgment is that federal procedure does not recognize a "no evidence" motion for summary judgment. Regardless of the title given to the motion, United States Supreme Court case law establishes clearly that summary judgment is appropriate when a party fails to present evidence that raises a genuine issue of material fact regarding an element essential of the party's case and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

pursuant to § 17.01. BP is entitled to summary judgment on J.V.'s breach of contract counterclaim and affirmative defense.

## IV. INDEMNITY PROVISIONS

Article 27 of the Contract establishes J.V.'s obligation to indemnify BP under the circumstances described therein. Section 27.01 provides:

> Contractor [J.V.] shall be solely responsible for all labor, materials, equipment and work until the Work is accepted by Company [BP]. Contractor shall reimburse [BP] for, defend, indemnify, and hold [BP] harmless from and against any and all liability, costs (including reimbursement of all attorney fees and other costs of defense), loss, damage, expense, claims . . ., suits, fines, and penalties on account of any and all bodily injuries or death to any persons . . . or damage to, or loss or destruction of any property (including without limitation, the Work and the property of [J.V. and BP]) arising directly or indirectly out of or in connection with the performance of this Contract, whether caused or contributed to in whole or in part by the concurrent, joint, active, or passive negligent act or commission of [BP or J.V.], except that [J.V.] assumes no liability for the sole negligent acts of [BP]. [BP] reserves the right to retain sufficient funds to cover this obligation.

Contract, Section 27.01.

BP seeks summary judgment on three issues relating to the indemnity provisions. First, BP seeks summary judgment that the indemnity provisions are valid and enforceable. Second, BP seeks summary judgment that the indemnity provision, § 27.01, applies to claims by BP against J.V., not only to claims against BP by third

parties. Third, BP seeks summary judgment that the indemnity provision permits generally the recovery of consequential damages.[4]

### A. Indemnity Provision is Valid and Enforceable

BP seeks summary judgment that the indemnity provision in the Contract is valid and enforceable. Under Texas law, an indemnity provision is valid and enforceable only if it satisfies each of two fair notice requirements. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004); *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509-10 (Tex. 1993). "One fair notice requirement, the express negligence doctrine, requires that the intent of the parties must be specifically stated in the four corners of the contract." *Storage & Processors*, 134 S.W.3d at 192 (quoting *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 707 (Tex. 1987)). The second fair notice requirement is conspicuousness and "mandates that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Id.* (quoting *Dresser,* 853 S.W.2d at 508; *Ling & Co. v. Trinity Sav. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex. 1972)). However, if both contracting parties have actual knowledge of the indemnity provision, the provision can be valid and enforceable even if the fair notice requirements are not

---

[4] BP is not seeking summary judgment that J.V.'s negligence caused BP's damages and, therefore, that BP is entitled to recover consequential damages from J.V. in this case.

satisfied. *Id.* (citing *Dresser,* 853 S.W.2d at 508 n. 2; *Cate v. Dover Corp.,* 790 S.W.2d 559, 561 (Tex. 1990)).

J.V. has admitted that it had actual knowledge of the indemnity provision prior to executing the Contract. *See* Admission No. 6, Exh. B-1 to Motion for Summary Judgment. As a result, the fair notice requirements need not be satisfied. BP is entitled to summary judgment that the indemnity provision is valid and enforceable.

### B. Indemnity Provision Applies to Claims by BP Against J.V.

BP seeks summary judgment that the indemnity provision allows it, as a party to the Contract, to seek indemnity from J.V. for the damages it sustained as a result of the fire. An indemnity provision is construed as any other contract. *Safeco Ins. Co. v. Gaubert,* 829 S.W.2d 274, 281 (Tex. App. - Dallas 1992, writ denied). "An indemnity agreement is a promise by the indemnitor to safeguard or hold the indemnitee harmless against existing or future loss or liability." *Kellogg Brown & Root Intern., Inc. v. Altanmia Comm. Mktg. Co., W.L.L.*, 2008 WL 5114962, *20 (S.D. Tex. Dec. 3, 2008) (Rosenthal, J.) (citing *Dresser,* 853 S.W.2d at 508). Generally, an indemnity provision "does not apply to claims between the parties to the agreement but obligates the indemnitor to protect the indemnitee against claims brought by third parties." *Id.* (citing *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.,* 179 S.W.3d 51, 63 (Tex. App. – San Antonio 2005, pet. denied)); *see also Derr*

*Constr. Co. v. City of Houston*, 846 S.W.2d 854, 858 (Tex. App. – Houston [14th Dist.] 1992, no writ). Nonetheless, indemnity agreements can be written to require the parties to "indemnify each other against claims they later assert against each other." *Ganske v. Spence,* 129 S.W.3d 701, 708 (Tex. App. - Waco 2004, no pet.); *see also Kellogg*, 2008 WL 5114962 at *20; *Radiant Sys., Inc. v. American Scheduling Inc.*, 2006 WL 2583266, *3 (N.D. Tex. Sept. 7, 2006). In *Radiant*, for example, the indemnity contract required Radiant to indemnify American Scheduling Inc. ("ASI") for any losses resulting from "the breach or falsity of any covenant or agreement made by [Radiant] in this Agreement." *Id.* The court held that this language clearly contemplated indemnity for a claim by ASI against Radiant because it specifically covered losses caused by a breach or falsity by Radiant. *Id.*

Similarly, in this case the indemnity provision specifically provides for indemnity for losses caused by "damage to, or loss or destruction of any property (including without limitation, the Work and the property of [J.V. and BP])." Contract, § 27.01. BP is the most likely, and perhaps the only, party to assert a claim for losses caused by damage to BP's property. The indemnity provision in § 27.01 is materially different from the indemnity provision at issue in *Kellogg*. In that case, the indemnity agreement simply provided for indemnity for damage "to any property" generally and without mentioning specifically the property of a party to the contract. In the case

before this Court, however, the provision specifically covers losses caused by damages to BP's property. The clear language in the contract establishes that it was written to require J.V. to indemnify BP for BP's own claims for losses caused by damage to BP's property. As a result, the indemnity provision in § 27.01 may be asserted by BP in this case.[5]

J.V. notes that the first sentence of § 27.01 provides that it "shall be solely responsible for all labor, materials, equipment and work until the Work is accepted by Company [BP]." Contract, § 27.01. J.V. argues that this sentence means that J.V. is required to indemnify BP only until BP accepts J.V.'s work, at which time the indemnity obligation no longer exists. J.V. cites nothing in § 27.01, in any other provision of the Contract, or in any legal authority that supports its interpretation of the indemnity agreement. The sentence relied on by J.V. does not state that BP's acceptance of J.V.'s work eliminates J.V.'s indemnity obligation. Instead, the sentence merely allocates risk during the period prior to BP's acceptance. Additionally, J.V.'s construction of the first sentence of § 27.01 as eliminating its indemnity obligation upon acceptance by BP is illogical and unreasonable since it is likely that latent defects in the work performed by J.V. may not become known or

---

[5] BP does not argue that it is entitled to summary judgment on the merits of its indemnity claim, only that it is entitled to assert the indemnity claim as a party to the Contract.

may not cause damage until well after the work has been completed by J.V. and accepted by BP. The Court rejects J.V.'s argument that its duty to indemnify BP ends when BP accepts the work as irrational and unsupported by the language of the Contract.

BP is entitled to summary judgment that it may assert a claim for indemnity under the Contract even though it is a party to that Contract.

### C.  Indemnity Provision Covers Consequential Damages

BP seeks summary judgment that the indemnity provision covers consequential damages. The indemnity provision, § 27.01, provides clearly and unambiguously that it covers "***any and all*** liability, costs . . . , loss, damage, expense, claims . . ., suits, fines, and penalties on account of any and all bodily injuries or death to any persons . . . or damage to, or loss or destruction of any property . . .." Contract, § 27.01 (emphasis added).

J.V. argues that, notwithstanding this clear inclusion of "any and all" damage within the coverage of the indemnity agreement, the indemnity provision does not cover consequential damages. J.V. argues that the indemnity provision does not specifically state that it covers consequential damages. J.V. cites no legal authority that supports its position that an indemnity provision must list each element of damages that it covers, and this Court is aware of none. The indemnity provision

states that it covers "any and all . . . damage," and "any and all" means ***any and all***. *See, e.g., Oxy USA, Inc. v. Southwestern Energy Prod. Co.*, 161 S.W.3d 277, 285 (Tex. App. – Corpus Christi 2005, pet. denied) (holding that "all claims" in an indemnity agreement means "all" claims).

J.V. also argues that the consequential damages are not included in the indemnity obligation because they are excluded in § 28.01, which provides that neither party shall be liable to the other for "special, indirect, or incidental consequential damages." Contract, § 28.01. There is nothing in § 28.01 that suggests it is a limitation on the preceding indemnity provision. To the contrary, the second sentence in § 28.01 states clearly and unambiguously that the "parties agree that this limitation of liability ***does not apply*** to any consequential damages which are integrated into any indemnification liability assumed by [J.V.] pursuant to this Contract." *Id.* (emphasis added).

J.V.'s argument that the indemnity provision does not cover consequential damages is not supported by legal authority and is refuted by the Contract. As a result, BP is entitled to summary judgment that the indemnity provision covers consequential damages.

## V.     CONCLUSION AND ORDER

J.V. has failed to present evidence that raises a genuine issue of material fact in support of its breach of contract counterclaim and affirmative defense. As a result, BP is entitled to summary judgment on those issues.

The clear and unambiguous language of the indemnity provision establishes that the provision is valid, enforceable, applies to claims by BP against J.V. for damage to BP's property, and provides generally for indemnity for consequential damages. Accordingly, it is hereby

**ORDERED** that BP's Motion for Summary Judgment on J.V.'s breach of contract counterclaim and affirmative defense [Doc. # 54] and BP's Motion for Partial Summary Judgment [Doc. # 55] are **GRANTED**.

SIGNED at Houston, Texas, this **21st** day of **April, 2010**.

_____
Nancy F. Atlas
United States District Judge