IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BP PRODUCTS NORTH AMERICA INC., *et al.*, Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. H-07-2369 |
| J.V. INDUSTRIAL COMPANIES, LTD., Defendant. | § | |

**MEMORANDUM AND ORDER**

This case is before the Court on several motions to exclude opinions by expert witnesses. Defendant J.V. Industrial Companies, Ltd. ("J.V.") filed a Motion to Exclude Martin Prager, Ph.D., from Testifying [Doc. # 53].[1] Plaintiffs BP Products North America Inc. ("BP") and American Home Assurance Company ("American Home") filed a Motion to Exclude Expert Opinions of John Adams[2] [Doc. # 56], a Motion to Exclude Expert Opinions of David E. Hendrix[3] [Doc. # 57], a Motion to

[1] BP filed a Response [Doc. # 68], and J.V. filed a Reply [Doc. # 69].

[2] J.V. filed a Response [Doc. # 66], BP filed a Reply [Doc. # 72], and J.V. filed a Reply [Doc. # 83].

[3] J.V. filed a Response [Doc. # 63], BP filed a Reply [Doc. # 76], and J.V. filed a Reply [Doc. # 81].

Exclude Expert Opinions of Thomas C. Shelton[4] [Doc. # 58], a Motion to Exclude Expert Opinions of Glenn Armstrong[5] [Doc. # 59], and a Motion to Exclude Expert Opinions of G. Michael Driscoll[6] [Doc. # 60]. Having carefully reviewed the record in this case and having applied relevant legal authorities, the Court denies the motions as to John Adams, Glenn Armstrong, and G. Michael Driscoll, and schedules a hearing on the motions as to Martin Prager, David E. Hendrix, and Thomas C. Shelton.

## I. BACKGROUND

J.V. removed and reinstalled piping elbows connected to the inlet and outlet sides of certain heat exchangers at the Resid Hydrotreating Unit ("RHU") at BP's refinery in Texas City, Texas. BP alleges that J.V. reinstalled the elbows in the wrong locations, switching the inlet and outlet elbows such that a carbon elbow was placed where a 1.25% chromium steel elbow belonged.

On July 28, 2005, a fire occurred at the BP facility where J.V. had performed the work on the heat exchangers. The fire damaged the elbows and exchangers, as

---

4 J.V. filed a Response [Doc. # 64], BP filed a Reply [Doc. # 75], and J.V. filed a Reply [Doc. # 80].

5 J.V. filed a Response [Doc. # 65], BP filed a Reply [Doc. # 73], and J.V. filed a Reply [Doc. # 82].

6 J.V. filed a Response [Doc. # 61], BP filed a Reply [Doc. # 74], and J.V. filed a Reply [Doc. # 79].

well as other equipment in the RHU and surrounding property. BP claims that it lost profits in its operation of the Texas City refinery as a result of the fire.

BP alleges that the fire was caused by the failure of the carbon elbow, improperly installed where a chromium steel elbow should have been installed, which caused the release and subsequent ignition of a mixture of hydrogen and methane. This allegation is supported by the results of investigations conducted by a BP Investigation Committee and by the U.S. Chemical Safety Board. J.V. and its insurers have refused to indemnify BP for the losses allegedly caused by the fire.

On July 20, 2007, BP filed this lawsuit against J.V. for breach of contract, negligence, and breach of warranty to recover for its property damages, lost profits, and attorneys' fees. After a lengthy period of discovery, the parties filed the pending motions regarding experts. The motions have been fully briefed and are ripe for decision.

## II. STANDARDS FOR EXPERT TESTIMONY

Witnesses who are qualified by "knowledge, skill, experience, training or education" may present opinion testimony to the jury. *See, e.g.*, *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting FED. R. EVID. 702). "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the

witness has applied the principles and methods reliably to the facts of the case." *Id*. (citing *Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 227 (5th Cir. 2007)). The trial courts act as "gate-keepers," making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002); *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592-93 (1993)).

The court should refuse to allow a witness to present opinion testimony in a particular field or on a given subject if the witness is not qualified in that particular field or subject matter. *Id*. (citing *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). An expert may not present opinion testimony that goes beyond the scope and extent of his expertise. *See Goodman v. Harris County*, 571 f.3d 388, 399 (5th Cir. 2009).

Most challenges to a witness's qualifications and methodology relate more to the weight to be given the expert's testimony than to its admissibility. *Holbrook v. Lykes Bros. S.S. Co., Inc*., 80 F.3d 777, 782 (3d Cir. 1996). Consequently, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## III. DAMAGES EXPERTS

John Adams is a chemical engineer whose opinions relate to BP's alleged property damage and business interruption losses. Glenn Armstrong is a mechanical engineer whose opinions relate to the reasonable costs for repairs to equipment damaged by the fire. G. Michael Driscoll is a Certified Public Accountant ("CPA") whose opinions relate to the manner in which BP's alleged lost profits could have been reduced.[7] BP seeks to exclude the opinion testimony of each of these three witnesses.

John Adams is qualified to testify as an expert on property damage and losses caused by business interruption. He has experience in the oil and gas industry, has issued opinions regarding the values of refineries and chemical plants in and around Houston, Texas. He appraised a Texas refinery for the appraisal district, providing experience in asset valuation in a refinery. Although his opinions regarding depreciation damages may not be relevant because BP is not seeking depreciation damages, his opinions regarding the reasonable cost of repair – particularly the elimination of any amount for contingencies since the repair work has been completed – is relevant, admissible, and can be challenged through cross-examination. Similarly,

---

7 Driscoll also offers the opinion that J.V. did not cause the fire. J.V. does not contest that Driscoll's qualifications do not extend to liability and causation issues, about which Driscoll will not be allowed to testify.

his decisions to calculate an amount of loss due to business interruption by using a rate of return on capital at BP's corporate level and annualizing lost profits over a two-month period are matters for vigorous cross-examination, not for disqualification under *Daubert*.

Glenn Armstrong is also qualified to testify as an expert on damages. He is a mechanical engineer with experience analyzing and evaluating property damage and equipment damage in connection with industrial and construction accidents. He has experience in petroleum refining and in estimating damage to petrochemical facilities. He seeks to testify that BP's estimate of repairs should be reduced by over $6.5 million, including, for example, the elimination of BP's claim for almost $1.5 million for safety training, safety meetings, and work time lost due to such safety events. The testimony is relevant and admissible and, if appropriate, can be challenged by cross-examination.

Michael Driscoll is a CPA who is qualified to present opinion testimony on lost profits. He has evaluated property damage and business interruption claims for over forty years. He is a Diplomate in the American Board of Forensic Accounting and a Life Fellow of the American College of Forensic Examiners. His opinions, including the opinion that BP's alleged lost profits are unreasonably high because they could

have repaired the damaged equipment more quickly, are subject to cross-examination to challenge the underlying factual basis for the opinions.

Except that Driscoll cannot present any testimony regarding his opinions on liability and causation, Adams, Armstrong, and Driscoll may present opinion testimony on the damages issues described in their reports.[8]

## IV. LIABILITY EXPERTS

### A. Martin Prager

Martin Prager was hired by BP to evaluate the failed elbow at the BP refinery. He prepared a detailed expert report that was provided to the U.S. Chemical Safety and Hazard Investigation Board ("CSB"). J.V. argues that Prager is, therefore, precluded from testifying because federal law precludes "the use or admission into evidence of CSB investigative reports in any suit or action for damages arising from such incidents." 40 C.F.R. § 1611.3(a). J.V. notes also that federal regulations preclude CSB employees from giving expert or opinion testimony. *Id.*, § 1611.3(b). An "employee" of the CSB includes contractors, contract employees, and consultants. 40 C.F.R. § 1611.2.

---

8 The Court notes that its practice is not to admit expert reports into evidence. Instead, the experts' opinions are presented only through their testimony at trial.

BP responds that it hired Prager and paid him for his services. BP maintains that Prager's report, later provided to the CSB, was prepared for BP and not at the request of the CSB.

The Court will conduct an evidentiary hearing to determine the precise status of Prager in connection with his work for BP and whether he worked in a capacity that would satisfy the "employee" definition of the federal regulations. If, as BP maintains, Prager performed work for BP and the result of that work was simply made available to the CSB, then Prager would likely be allowed to testify about his work for BP and the opinions he reached as a result of that work. He would not, however, be premitted to attempt to bolster his testimony by asserting or suggesting that his work was provided to and accepted by the CSB.

**B. <u>David E. Hendrix and Thomas C. Shelton</u>**

David Hendrix is a metallurgical engineer who seeks to provide opinion testimony that BP's process safety management, process hazard analysis, and mechanical integrity procedures were deficient and violated regulations of the Occupational Safety and Health Act ("OSHA"). It appears that, although Hendrix has conducted after-the-fact failure analysis, he may not be qualified to render opinions

on OSHA regulations and process safety issues which are beyond his training and experience as a metallurgical engineer.[9]

Thomas Shelton is a metallurgical engineer who seeks to provide opinion testimony regarding high temperature high pressure attack ("HTHA") on carbon steel. BP argues that Shelton should not be permitted to provide these opinions because he has no expertise in the specialized HTHA area. As was true with Hendrix, it appears that the opinions he seeks to present may be outside his more generalized area of expertise. Additionally, BP notes that Shelton's opinions are based predominantly on a single, anecdotal article published by Richard B. Setterlund which describes an example of carbon steel pipe (not an elbow as is at issue in this case) that remained in service at high temperature and high pressure without failing. It is unlikely that such an anecdotal article regarding a different piece of equipment would be relevant, or that any relevance would outweigh any prejudice or confusion.

The Court is not inclined, however, to exclude these two experts or their specific opinions without a *Daubert* hearing at which the witnesses can provide the

---

9 BP also challenges references by Hendrix to reports by the Baker Blue Ribbon Panel, ABS Consultant, and the CSB. J.V. responds that expert witnesses are permitted to review materials that would not be otherwise admissible. While it is true that an expert may review inadmissible documents and other materials, having an expert review a document does not render admissible an otherwise inadmissible report. Consequently, if the reports challenged by BP are not admissible on some other basis, Hendrix may not refer to them in his testimony.

Court with a more detailed description of their background, training, and experience and how they reached the opinions they seek to present.

## V. CONCLUSION AND ORDER

Based on the foregoing, it is hereby

**ORDERED** that BP's Motion to Exclude Expert Opinions of John Adams Doc. # 56], Motion to Exclude Expert Opinions of Glenn Armstrong [Doc. # 59], and BP's Motion to Exclude Expert Opinions of G. Michael Driscoll [Doc. # 60] are **DENIED** as set forth herein. It is further

**ORDERED** that counsel and named experts shall appear before the Court on **June 11, 2010,** at **9:30 a.m.** for a hearing regarding J.V.'s Motion to Exclude Martin Prager From Testifying [Doc. # 53] and a *Daubert* hearing on BP's Motion to Exclude Expert Opinions of David E. Hendrix [Doc. # 57] and Motion to Exclude Expert Opinions of Thomas E. Shelton [Doc. # 58].[10] It is further

**ORDERED** that the deadline for the parties Joint Pretrial Order is extended to **June 16, 2010**, and docket call is rescheduled to **June 23, 2010 at 3:00 p.m.**

SIGNED at Houston, Texas, this **27th** day of **April, 2010**.

Nancy F. Atlas
United States District Judge

[10] The Court has been informed that the parties anticipate mediating this case in May 2010. If the mediation is successful and the Court has been advised before June 11, 2010, that the case has been settled, the hearing will be cancelled.